UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV-313-S

[CAPITAL CASE]

BEORIA ABRAHAM SIMMONS                                   PETITIONER

v.

THOMAS L. SIMPSON                                        RESPONDENT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court on Respondent's Objection (DN 141) to the Magistrate

Judge's February 11, 2009, Order granting Simmons leave to conduct discovery as related to his

*Batson* claim pursuant to Rule 6 of the Rules Governing 28 U.S.C. § 2254 cases (DN 126).

A review of the procedural history of Simmons' *Batson* claim is necessary to place the

Objection in the proper context.  Simmons alleges that the two prosecutors who tried his case in

March of 1985, denied him equal protection of law under the Fourteenth Amendment when they

used their peremptory challenges during jury selection to exclude five of seven African

Americans from his jury.

Approximately ten months prior to the start of trial, Simmons' attorney filed a motion to

restrict the prosecution from using its peremptory challenges in a racially biased manner to

exclude African Americans from serving on the jury at trial.  Simmons' attorney maintained in

his motion that the Jefferson Commonwealth Attorney's Office had a long history of excluding

African Americans from juries in criminal trials that involved members of the opposite race.

Because Simmons' case involved an African-American defendant and four white victims,

Simmons' attorney wrote in his motion that he anticipated that the prosecution would continue

the practice of racial discrimination in the exercise of peremptory strikes in an effort to inject racial prejudice into the fact-finding process of the jury.[1]  The prosecution filed a response to the motion that did not directly deny Simmons' allegation of the racially discriminatory use of peremptory strikes.  Instead, the prosecution asserted in its response that Simmons had not alleged facts sufficient to support his motion and had not provided any data that proved that the local prosecutor's office had used its peremptory challenges in the past in a racially biased manner.  The trial court denied Simmons' motion without opinion.

Jury selection in Simmons' trial began in late February of 1985.  The venire panel consisted of forty-five potential jurors including ten African Americans.  Three of the ten African-American panelists were excused for cause during the selection process leaving seven African-American panelists when the parties began to exercise their peremptory strikes.  The prosecution exercised five of its seven peremptory challenges, or 71%, to remove five of the seven remaining African Americans from the potential jury panel.  The defense removed one African-American panelist, and the sole remaining African American served on the jury at Simmons's trial.

After each side had exhausted its peremptory challenges, the court asked counsel for each party if he was satisfied with the jury.  Both sides indicated that they were satisfied. After the remaining members of the panel were excused and the jurors sworn, Simmons' counsel approached the bench and objected to the manner in which the Commonwealth exercised its peremptory challenges to exclude African Americans from the petit jury and requested a

---

[1]Simmons, an African-American male, was on trial for kidnapping, raping, and murdering three white females in the early 1980s and the kidnapping and attempted rape and murder of a fourth white female.

mistrial.[2]  The trial court summarily denied the objection without elaboration.  Simmons

proceeded to trial and was convicted and sentenced to death.

Simmons appealed his conviction and sentence to the Kentucky Supreme Court.  While

Simmons' case was on appeal, the United States Supreme Court rendered its decision in *Batson*

*v. Kentucky*, 476 U.S. 79, 96-97 (1986), a case that involved the same Commonwealth

Attorney's Office that prosecuted Simmons.  In *Batson*, the Court held that the Constitutional

guarantee of equal protection ensures that a party may not exercise a peremptory challenge to

remove an individual on account of that person's race.  *Id.* at 79.  Furthermore, the Court held for

the first time that a criminal "defendant may establish a *prima facie* case of purposeful

discrimination in selection of the petit jury solely on evidence concerning the prosecutor's

exercise of peremptory challenges at the defendant's trial."  *Id.*  In so doing, *Batson* explained

that the defendant first must establish a *prima facie* case by showing that he is a member of a

cognizable racial group and that the prosecutor exercised peremptory challenges to remove from

the venire members of the defendant's race.  *Id.* at 96-97.  Once the defendant makes such a

*prima facie* showing, the burden shifts to the prosecution to come forward with a neutral

explanation for the exercise of its peremptory strikes to remove potential jurors.  *Id.* at 98.

In 1987, the Supreme Court made the *Batson* decision retroactively applicable to all

criminal cases that were pending on direct appeal at the time the *Batson* decision was rendered.

*See Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).  This meant that the Kentucky Supreme

Court was bound to apply *Batson* to Simmons' case.  However, the Kentucky Supreme Court

---

[2]The objection was not labeled a *Batson* objection, because *Batson* had not yet been
decided by the United States Supreme Court.

3

refused to consider the merits of Simmons' *Batson* claim.  The state appellate court held that Simmons did not timely/properly assert the *Batson* claim in state court.

The Kentucky Supreme Court relied on the fact that Simmons' objection to the prosecution's use of peremptory challenges was not made until after Simmons had accepted the jury and the non-selected jurors were discharged and had left the courtroom.  *Simmons v. Commonwealth*, 746 S.W.2d 393, 397-98 (Ky. 1988).  The court also noted that Simmons had not requested that the disputed peremptory challenges be disallowed, but had only asked for a mistrial instead.  Citing *Batson*, the state supreme court held that a timely objection to peremptory challenges was required so that the trial court could hold a hearing to see if discrimination had occurred before the panel was discharged.  The court noted that under Kentucky Rule of Criminal Procedure (RCr) 9.36(2), peremptory challenges must be exercised simultaneously by each party who strikes the names of the challenged jurors from the list and returns it to the court, which then chooses the names that remain.  *Id.*  After citing this general state practice of jury selection, the Kentucky Supreme Court continued to hold, without citing to any specific rule of criminal procedure or judicial opinion for this principle, that if there is a challenge to be made to the exercise of peremptories in this state, it should be made when the list of strikes has been returned to the judge and before the jury has been accepted by the parties and sworn to try the case and before the remainder of the jurors has been discharged from service.  The Kentucky Supreme Court ultimately concluded that Simmons had not made a timely challenge to the exercise of peremptories by the Commonwealth, and therefore, it refused to address the merits of his *Batson* claim.

As part of this habeas action, Simmons now seeks discovery related to his *Batson* claim.

4

Respondent contends that discovery should not be permitted because Simmons procedurally defaulted his *Batson* claim.  Rule 6(a) of the Rules Governing Section 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure, and may limit the extent of discovery."  Thus, unlike the usual civil litigant in federal court, a habeas petitioner is not entitled to discovery "as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Obviously, if Simmons procedurally defaulted the *Batson* claim and if cause and prejudice cannot be shown for the alleged default, discovery on the merits of the claim would be futile.  As such, the Magistrate Judge correctly determined that it was necessary for him to determine "whether, in fact, Simmons' *Batson* claim was procedurally defaulted; and if so, whether the requested discovery would nevertheless be material to excuse the default."

In ruling on Respondent's objection, this Court must first determine what standard of review applies to the Magistrate Judge's Order.  Decisions made by a magistrate judge relating to discovery matters are generally reviewed only under an abuse of discretion standard. *Baker v. Peterson*, 67 F. App'x 308 (6th Cir. 2003).  However, this is a unique discovery ruling because the Magistrate Judge's Order permitting discovery is entirely based on his conclusion that Simmons did not procedurally default his *Batson* claim, a merits determination.  Thus, out of an abundance of caution, this Court has undertaken a *de novo* review of Respondent's Objection. *See United States v. Shami*, 754 F.2d 670, 672 (6th Cir. 1985) ("[D]e novo review of a magistrate's report is both statutorily and constitutionally required.").

The Court has carefully and independently reviewed Respondent's Objection and the briefing related thereto.  After doing so, the Court is thoroughly convinced that the Magistrate

Judge correctly decided the issue of procedural default and in turn properly allowed discovery related to Simmons' *Batson* claim.[3]  It defies logic that the Kentucky Supreme Court could have applied an "established rule of state procedure via RCr 9.22 and 9.36" in Simmons' case.  Those rules say nothing about how to raise a *Batson* objection, and *Batson* had not even been decided by the Supreme Court at the time Simmons was tried.  As such, it is impossible that there could have existed in Kentucky at the time of his trial an established procedure for raising a *Batson* objection.  The Magistrate Judge is correct that "the rule of state procedure created in Simmons . . . was a new rule of Kentucky procedure that was applied retroactively for the first time on appeal."  Likewise, this Court agrees with the Magistrate Judge that "the ensuing history of the Simmons' rule, and the very language of the Kentucky Supreme Court, convincingly demonstrate that such rule is not an independent and adequate state ground on which to deny review--if for no other reason than the fundamental principle that a 'better practice' does not equate to a required practice; and a rule which the court merely 'suggests' is by definition not one that it requires."

As the Magistrate Judge correctly decided that Simmons should not be barred by the doctrine of procedural default from raising his *Batson* claim, he likewise correctly decided that Simmons should be allowed additional discovery related to that claim.  Simmons by no fault of his own was never permitted an opportunity to conduct discovery in the state courts related to his *Batson* challenge, and to date no *Batson* hearing has ever been conducted to examine his claim.  "Where specific allegations before the court show reason to believe that the petitioner may, if the

---

[3]The Court observes that the Magistrate Judge's Order, numbering fifty-one pages, is obviously the product of an extensive review of the record in this case as well as an exhaustive examination of the law relative to the *Batson* claim.

facts are fully developed, be able to demonstrate that he is . . . entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." *Bracy*, 520 U.S. at 909 (quoting *Harris v. Nelson*, 394 U.S. 286, 299 (1969)).  After a review of the record to date, this Court is satisfied that good cause exists to support additional discovery related to the *Batson* claim.[4]  Likewise, the scope of discovery appears reasonable and not overly broad or unduly burdensome.  Additionally, the Court finds no error in the expansion of the record.

> For the reasons set forth above, Respondent's Objection to the Magistrate Judge's February 11, 2009, Order (DN 141) is **OVERRULED**.

Date:  December 8, 2009

**Charles R. Simpson III, Judge**
**United States District Court**

cc:    Counsel of record
       Magistrate Judge Dave Whalin

---

[4]The Court's conclusion is based in part on the percentage of African-American venire panelists that were stricken by the prosecution as well as the instructions contained in the manual made available to prosecutors during the relevant time period.